UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
**FILED**
JUL 13 2022
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 21-CR-00101-SS-DCR

UNITED STATES OF AMERICA     PLAINTIFF

V.     **PLEA AGREEMENT**

ERIC LAMONT TRIGG     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter guilty pleas to Count 1 of the Second Superseding Indictment, charging a violation of 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute and to Distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance and a guilty plea to Count 3 of the Second Superseding Indictment, charging a violation of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance. The United States will move to dismiss Count 2 of the Second Superseding Indictment. at the sentencing hearing.

2. The essential elements of Count 1 are:

    (a) that the Defendant, and others, did engage in a conspiracy or agreement to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and

    (b) that the Defendant knew the purpose of the agreement and voluntarily joined the conspiracy.

The essential elements of Count 3 are:

    (a) that the Defendant and others, did knowingly and intentionally possess with intent to distribute 400 grams of a mixture or substance containing fentanyl, a Schedule II controlled substance, and

    (b) that the Defendant intended to distribute it to another person.

3. As to Counts 1, 3, and relevant conduct, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

    a)    In or about January 2021, Raeshawna Campbell (R.C) allowed Maurice Taylor (Taylor) to store drugs at her residence on Lucille Drive, in Lexington, Fayette County, Kentucky in the Eastern District of Kentucky. Taylor brought over the drugs in a duffel bag in approximately February 2021 and stored them in a closet at her residence. At the direction of Taylor, the Defendant and Shad Wilson would pick up the drugs from her residence for distribution to others. The Defendant did not know the amounts of the drugs or the kind of drugs kept in the residence. The drugs were already prepackaged when the Defendant would go into the closet to retrieve the drugs. The Defendant retrieved a number of packages of different occasions as directed by Taylor. R.C. did not provide a door key to Taylor, the Defendant or Wilson. However, R.C. would allow access to her residence for Taylor, the Defendant, and Wilson to make their drug pickups. On occasion R.C. would leave her back door unlocked or be present with a key to let them into her residence. Taylor would call R.C. and tell her that he, the Defendant or Wilson were coming over to make a pickup of drugs. After the Defendant picked up the drugs, Taylor would direct the Defendant to a certain location to drop off the drugs to another person. The Defendant performed this function on approximately 3-4 occasions for Taylor. Taylor would pay the Defendant for each delivery.

    b)    Immediately prior to August 19, 2021, law enforcement was conducting surveillance on the Defendant and observed him on Lucille Drive near R.C.'s residence. The United States can prove that on that day, the Defendant, at the direction of Taylor, entered R. C. 's residence and removed a quantity of drugs. Said drugs were delivered to an unknown subject at a location as directed by

Taylor.

c) On or about August 19, 2021, law enforcement officers were conducting surveillance on Taylor. He was followed to R.C's house on Lucille Drive in Lexington where he parked outside on the street. After approximately 30 minutes, R.C. arrived, pulled into the driveway, and opened the garage door. When she pulled in, Taylor exited his vehicle and they both went inside. They were inside her residence for a few minutes when Taylor was observed by law enforcement officers with an item under his shirt. Taylor was subsequently apprehended with 1 kilogram of cocaine in his possession.

d)   Thereafter, a search warrant was executed at R.C's residence. Detectives located a duffle bag inside a box in the living room closet. This duffle bag contained approximately 9.6 kilograms (gross weight) of fentanyl. The suspected fentanyl was sent to the KSP lab and tested positive for approximately 7.9 kilograms of a mixture or substance containing fentanyl, a Schedule II Controlled Substance. The amount of suspected cocaine seized from Taylor was approximately 1 kilogram (gross weight). The suspected cocaine was sent to the KSP lab and tested positive for approximately 1,008 grams of a mixture or substance containing cocaine, a Schedule II Controlled Substance. Both amounts individually and collectively are consistent with distribution as opposed to mere personal use.

e) The Defendant admits that the United States can prove that he engaged in an agreement with Taylor and others to distribute over 400 grams of fentanyl, and that he, Taylor and others did possess with intent to distribute 400 grams of fentanyl. As to relevant conduct, the amount of cocaine removed by Taylor from R.C.'s residence was approximately 1 kilogram.

4. The statutory punishment for Counts 1 and 3 is imprisonment for not less than 10 years and not more than LIFE imprisonment, not more than a $10,000,000 fine, and at least 5 years supervised release. A mandatory special assessment of $100 per count applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 2021 Manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct listed in paragraph 3 above as well as previously provided discovery. The parties agree that the amount of fentanyl foreseeable to this Defendant is approximately 7.9 kilograms which is 7,900 grams. One gram of fentanyl is equivalent to 2.5 kilograms of converted drug weight. Therefore, 7,900 grams of fentanyl x 2.5 kilograms of converted drug weight equals approximately 19,750 kilograms of converted drug weight. As to relevant conduct, the amount of cocaine foreseeable to this Defendant as part of this Conspiracy is 1008 grams. One gram of cocaine is equivalent to 200 grams of converted drug weight. Therefore 1,008 grams of cocaine x 200 grams of converted drug weight equals of 201,600 grams equivalent to 201.6 kilograms of converted drug weight. The combined total of 19,750 kilograms plus 201.6 kilograms equals 19,951.6 kilograms of converted drug weight. As this amount is between 10,000 KG and 30,000 KG of converted drug weight this is a base offense level of 34.

    (c) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal the final sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

9. The Defendant understands and agrees that pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court

imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

10. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

11. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

12. This Agreement does not bind the United States Attorneys Offices in other districts, or any other federal, state, or local prosecuting authorities.

13. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendants entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
U.S. ATTORNEY

Date: 7/13/22          By: _____
                           Roger W. West
                           Assistant United States Attorney

Date: 7-13-22          _____
                       Eric Lamont Trigg
                       Defendant

Date: 7/13/22          _____
                       Hon. Ben Allen
                       Attorney for Defendant

7