UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED
JUL 18 2022
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 21-CR-00101-SS-DCR

UNITED STATES OF AMERICA     PLAINTIFF

V.     **PLEA AGREEMENT**

RAESHAWNA MICHELLE CAMPBELL     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 2 of the Second Superseding Indictment, charging a violation of 21 U.S.C. § 856(a)(2) Operating a Drug Involved Premises. At the appropriate time, the United States will move to dismiss Counts 1 & 3.

2. The essential elements of Count 2 are:

    (a) that the Defendant managed or controlled a place as an owner, lessee, agent, employee, occupant, or mortgagee; and

    (b) The Defendant knowingly and intentionally rented, leased, profited from, or made the place available for use for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

3. As to Count 2, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

    a) After approximately January 1, 2017, the exact date unknown, the Defendant became acquainted with Maurice A. Taylor. Thereafter, the Defendant and Taylor began a romantic relationship. Prior to October 2019, the Defendant did not see

items belonging to Taylor in her home. In October 2019, the Defendant opened a bin in her home and discovered a large amount of a substance. The substance was identified by Taylor as a controlled substance. Thereafter, the Defendant ended her romantic relationship with Taylor. Taylor and one of his associates retrieved all controlled substances from her residence.

b) The Defendant and Taylor remained friends and after several months they began dating again. In January 2021, the Defendant allowed Taylor to store drugs at her residence on Lucille Drive, Lexington, Fayette County, Kentucky in the Eastern District of Kentucky (EDKY). Taylor brought over the drugs in a duffel bag in February 2021 and stored them in the closet. Taylor in conjunction with Eric Trigg and Shad Wilson would on occasion pick up the drugs from her residence. The Defendant did not provide a key to Taylor or any of his associates. She did allow access to her residence for Taylor, Trigg, and Wilson to make their drug pickups by, on occasion, leaving the back door unlocked or being present with a key to let them into her residence. Taylor would call her and state that he, Trigg or Wilson were coming over to make a pickup of drugs. The Defendant had been present when all three subjects either individually or collectively came over to her residence to pick up drugs. She did not see what kind of drugs, how much was removed, or if it was concealed when the amount was removed. The Defendant did know that the stored drugs were not for mere personal use, but were meant for distribution to others. The Defendant did not know who the drugs were being delivered to, sold to, and did not know any monetary information.

c) During the course of allowing Taylor and others to use her residence, Taylor requested that the Defendant allow Taylor and his drug suppliers to use her garage to unload drugs. At Taylor's direction, she allowed unknown male Hispanic subjects to use her garage to unload drugs from vehicles. The Defendant did not participate in unloading the vehicles. The Defendant was present on at least one occasion when a male Hispanic in a pickup truck pulling a trailer unloaded drugs from a trailer at her residence. The Defendant did not know what kind of drugs were unloaded or the amount of drugs that were unloaded.

d) On or about August 19, 2021, law enforcement officers began conducting surveillance on Taylor. He was followed to the Defendant's residence on Lucille Drive where he parked his car outside the residence on the street. After approximately 30 minutes, the Defendant arrived, pulled into the driveway, and opened the garage door. When she pulled in, Taylor exited his vehicle and they both went inside. They were inside her residence for a few minutes when Taylor was observed by law enforcement officers leaving the residence with an item under his shirt. Taylor was subsequently apprehended with 1 kilogram of cocaine in his possession.

e) Thereafter, a search warrant was executed at the Defendant's residence. Detectives located a duffle bag inside a box in the living room closet. This duffle bag contained approximately 9.6 kilograms (gross weight) of suspected fentanyl. The suspected fentanyl was sent to the KSP lab and tested positive for approximately 7.9 kilograms of a mixture or substance containing fentanyl, a Schedule II Controlled Substance. The amount of suspected cocaine seized from Taylor was approximately 1 kilogram (gross weight). The suspected cocaine was sent to the KSP lab and tested positive for approximately 1,008 grams of a mixture or substance containing cocaine, a Schedule II Controlled Substance. Both amounts individually and collectively are consistent with distribution as opposed to mere personal use.

f) The Defendant admits that the United States can prove that she knew that Taylor and others were using her residence on Lucille Drive to store, use, and maintain her residence to store controlled substances for distribution by others.

4. The statutory punishment for Count 2 is imprisonment for not more than 20 years imprisonment, a fine of not more than $500,000, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. The parties have agreed to disagree on some of the guideline calculations as listed below. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2021 Manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct listed in paragraph 3 above as well as previously provided discovery. The parties agree that the amount of fentanyl foreseeable to this Defendant is approximately 7.9 kilograms. This amount converts to approximately 19,750 kilograms of converted drug weight. The amount of cocaine

foreseeable to this Defendant is 1008 grams. The amount converts to 201.6 kilograms of converted drug weight. The combined total is 19,951.6 kilograms of converted drug weight. This is a base offense level of 34.

(c) However, the parties agree to disagree as to how U.S.S.G. § 2D1.8(a)(2) applies. The parties agree that the facts of the underlying offense are that she had no participation in the underlying offense other than allowing the use of the premises. How this factual agreement impacts the total base offense level is where the parties may agree or disagree.

(d) The Defendant reserves the right to request a downward adjustment (including "minimal participant") pursuant to U.S.S.G. § 3B1.2. If the Defendant receives a "minimal participant" reduction, the Defendant may qualify for an additional two level decrease under 2D1.1(b)(17).

(e) The parties agree that pursuant to U.S.S.G. §2D1.1(a)(5)(ii), if the base offense level is a 34 or 36, the base offense is reduced by 3 levels.

(f) Pursuant to U.S.S.G. § 5C1.2, the parties agree that the Defendant may qualify for a "safety valve" reduction of 2 levels.

(g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant=s timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal the final sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

9. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in

another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

10. The Defendant understands and agrees that pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

11. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. This Agreement does not bind the United States Attorney=s Offices in other districts, or any other federal, state, or local prosecuting authorities.

14. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant=s entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
U.S. ATTORNEY

Date: 7/18/2022    By: _____ AUSA
Roger W. West
Assistant United States Attorney

Date: 7/18/2022    _____
Raeshawna Michelle Campbell
Defendant

Date: 7/18/2022    _____
Hon. Jay Oakley
Attorney for Defendant