UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
F I L E D
JUL 19 2022
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 21-CR-00101-SS-DCR

UNITED STATES OF AMERICA     PLAINTIFF

V.     **PLEA AGREEMENT**

MAURICE A. TAYLOR     DEFENDANT
aka WEE WEE

\*   \*   \*   \*   \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter guilty pleas to Count 1 of the Second Superseding Indictment, charging a violation of 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute and to Distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine and 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, both Schedule II controlled substances, and a guilty plea to Count 7 of the Indictment, charging a violation of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance. The Defendant will forfeit his claim to the assets listed in the Forfeiture Allegation. At the appropriate time the United States will move to dismiss the underlying Indictments as they pertain to this Defendant as well as Counts 2, 3 and 9 of this Second Superseding Indictment.

2. The essential elements of Count 1 are:

(a) that the Defendant, and others, did engage in a conspiracy or agreement to possess with intent to distribute and to distribute 5 kilograms or more of a mixture or substance containing of a mixture or substance containing a detectable amount of cocaine and 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, both Schedule II controlled substances, and

(b) that the Defendant knew the purpose of the agreement and voluntarily joined the conspiracy.

The essential elements of Count 7 are:

(a) that the Defendant did knowingly and intentionally possess 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, and

(b) that the Defendant intended to distribute it to another person.

3. As to Counts 1 and 7, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

a) In mid to late 2017, the exact date unknown, the Defendant engaged in an agreement with an individual outside of the Eastern District of Kentucky to receive shipments of cocaine and fentanyl at irregular intervals. The shipments originated outside the Eastern District of Kentucky (EDKY) and were delivered to locations here in Lexington, Fayette County, Kentucky in the Eastern District of Kentucky. These locations include but are not to limited a residence on Wheatcroft Drive and a residence on Lucille Drive.

b) On or about October 19, 2020, state and local law enforcement were conducting an investigation at the Wheatcroft Drive address. Law enforcement received information that a large shipment of controlled substances was to be delivered to that address and unloaded at the same location. Surveillance agents that were located outside of the residence observed a male Hispanic individual driving an SUV pulling a trailer that contained a riding lawn mower arrive at that location. The trailer was pulled into the garage and the garage door was closed. Inside the garage the male Hispanic began removing the axles of the trailer which contained multiple bags of controlled substances. One of the bags broke open and a portion of the contents (suspected fentanyl) as placed inside another plastic

2

grocery style bag and knotted. While the axles were being unloaded in the garage, surveillance agents observed the Defendant and another individual arrive at that residence. The Defendant and Tanner had known each other for several years before October 19, 2020. The Defendant agreed to pay Brown to use Brown's residence as a location to unload ~~and store~~ controlled substances.

c) Shortly after the axles were unloaded, the Defendant called another person and directed her to come to Wheatcroft. Upon her arrival at Wheatcroft, surveillance agents observed Taylor walk over to the individual's vehicle and place an item inside her vehicle. ~~[redacted]~~ The male Hispanic in the garage put the axles back on the trailer and left the Wheatcroft residence driving the same SUV pulling the same trailer. The Defendant left the residence within the same time interval. The vehicle driven by the other person, later identified as Ouisha Talbert, was stopped by Lexington Police (LPD) shortly thereafter and contained approximately 3 kilograms of suspected cocaine.

d) The suspected fentanyl in the bag seized from Brown's residence was sent to the KSP lab and tested positive for approximately 182.3 grams of a mixture or substance containing fentanyl, a Schedule II controlled substance. The suspected cocaine seized from Talbert's vehicle was sent to the KSP lab and tested positive for approximately 2.99 kilograms of a mixture or substance containing cocaine, a Schedule II controlled substance.

e) On or about January 2021, Raeshawna Campbell allowed the Defendant to store controlled substances at her residence on Lucille Drive, also in Lexington, Fayette County, Kentucky in the EDKY. In February 2021, the Defendant brought over the controlled substances in a duffel bag and stored them in a closet of Campbell's residence. The Defendant, Eric Trigg, and Shad Wilson would on occasion pick up controlled substances from Campbell's residence. Campbell did not provide a key to any of these three subjects. Campbell did allow access to her residence for the Defendant, Trigg, and Wilson to make the drug pickups, on occasion, by leaving the back door unlocked or being present with a key to let them into her residence. The Defendant would call her and state that he, Trigg or Wilson were coming over to make a pickup of controlled substances. The Defendant did not advise Campbell of the type or the quantity of the controlled substances being stored at her residence or to who the controlled substances were being delivered.

f) During the course of using the Lucille address to store controlled substances the Defendant arranged for the male Hispanic subject listed above to use the Lucille address garage to unload drugs from vehicles. On at least one or

3

more occasions the male Hispanic unloaded drugs from the axles of the trailer.

g)    On or about August 19, 2021, law enforcement officers began conducting surveillance on the Defendant. He was followed to Campbell's house on Lucille Drive in Lexington where he parked outside. After approximately 30 minutes, Campbell arrived, pulled into the driveway, and opened the garage door. When she pulled in, the Defendant exited his vehicle and they both went inside. They were inside her residence for a few minutes when the Defendant was observed leaving her residence with an item under his shirt. The Defendant was subsequently apprehended with a 1 kilogram of cocaine in his possession. The amount of $18,166 in cash was also seized from the Defendant which represents proceeds or substitute assets form the distribution of controlled substances.

h)    Thereafter, a search warrant was executed at the Lucille Drive address. Detectives located a duffle bag inside a box in the living room closet. This duffle bag contained approximately 9.6 kilograms (gross weight) of fentanyl. The suspected fentanyl was sent to the KSP lab and tested positive for approximately 7.9 kilograms of a mixture or substance containing fentanyl, a Schedule II controlled substance. The amount of suspected cocaine seized from Taylor was approximately 1 kilogram (gross weight). The suspected cocaine was sent to the KSP lab and tested positive for approximately 1,008 grams of a mixture or substance containing cocaine, a Schedule II controlled substance. Both amounts individually and collectively are consistent with distribution as opposed to mere personal use.

i) The Defendant admits that the United States can prove that he engaged in an agreement with others to possess with intent to distribute and distribute 5 kilograms or more of a mixture or substance containing cocaine and 400 grams or more of a mixture or substance containing fentanyl. Additionally, the Defendant admits that the United States can prove that on or about August 19, 2021 and October 20, 2020, he and others possessed with intent to distribute 500 grams or more of a mixture or substance containing cocaine, a Schedule II controlled substance.

4. The statutory punishment for Count 1 is imprisonment for not less than 10 years and not more than Life Imprisonment, not more than a $10,000,000 fine and at least 5 years of supervised release. The statutory punishment for Count 7 is imprisonment for not less than 5 years and not more than 40 years imprisonment, a fine

of not more than $5,000,000, and a term of supervised release of at least 4 years. A mandatory special assessment of $100 per count for a total of $200, applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

    5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 2021 Manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct listed in paragraph 3 above as well as previously provided discovery. The parties agree that the amount of fentanyl foreseeable to this Defendant is approximately 7.9 kilograms which is 7,900 grams. One gram of fentanyl is equivalent to 2.5 kilograms of converted drug weight. Therefore, 7,900 grams of fentanyl X 2.5 kilograms equals approximately 19,750 kilograms of converted drug weight. The amount of cocaine foreseeable to the Defendant is approximately 10 kilograms, but less than 15 kilograms. One gram of cocaine is equivalent to 200 grams of converted drug weight. Therefore 10,000 grams of cocaine X 200 grams of converted drug weight equals 2,000 kilograms  The combined total of 29,750 kilograms of converted drug weight is a base offense level of 34.

    (c) Pursuant to U.S.S.G. § 3B1.2, the Defendant understands that he may be assessed a 2 level to a 4 level increase for a leadership role. The Defendant reserves the right to object to such a designation if it is applied.

    (d) Pursuant to U.S.S.G. § 2D1.1(b)(12), the Defendant understands that he may be assessed a 2 level increase for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. The Defendant reserves the right to object to such a designation if it is applied.

    (e) Pursuant to U.S.S.G. § 2D1.1(b)(16)(A)(i), the Defendant understands that he may be assessed a 2 level increase for the use of friendship, affection, or some combination thereof, to involve another person in the illegal storage of

5

controlled substances provided (ii) the individual received little or no compensation from the illegal storage of controlled substances and (iii)the individual had minimal knowledge of the scope and structure of the enterprise. The Defendant reserves the right to object to such a designation if it is applied.

(f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal the final sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies,

property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

9. The Defendant understands and agrees that pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

10. The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the Indictment and will execute any documents necessary for this forfeiture. The Defendant agrees that this property is subject to forfeiture because the United States could prove by a preponderance of the evidence that a nexus exists between the property and criminal conduct. The Defendant agrees to waive any timing provisions of Rule 32.2 pertaining the to the entry of forfeiture orders.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

13. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
U.S. ATTORNEY

Date: 7/15/22

By: *[signature]* W. West AUSA
Roger W. West
Assistant United States Attorney

Date: 7/19/22

*[signature]*
Maurice A. Taylor
Defendant

Date: 7/19/22

*[signature]*
Hon. Matthew Boyd &
Hon. Gayle Slaughter
Attorney for Defendant