**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

Eastern District of Kentucky
**F I L E D**

JUL 1 9 2022

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**CRIMINAL ACTION NO. 21-CR-00101-SS-DCR**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**V.**                                     **PLEA AGREEMENT**

**OUISHA SIMONE TALBERT**                                              **DEFENDANT**

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 7 of the Second Superseding Indictment, charging a violation of 21 U.S.C. § 841(a)(1) Possession with Intent to Distribute 500 grams or more of a mixture or substance containing cocaine, a Schedule II controlled substance.

2. The essential elements of Count 7 are:

> (a) that the Defendant did possess with intent to distribute to another person, 500 grams or more of a mixture or substance containing cocaine, a Schedule II controlled substance, and

> (b) that the Defendant so knowingly and intentionally.

3. As to Count 7, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

> a) Prior to October 2020, the Defendant engaged in a romantic relationship with Maurice Taylor. Taylor used to reside in Lexington, Kentucky, but had moved his primary residence to Charlotte, North Carolina several months before October 2020. The Defendant is a resident of Lexington and prior to October 2020 knew

that Taylor had moved his residence. Taylor would come to Lexington frequently and on some of his visits would contact the Defendant. The Defendant knew that Taylor was unemployed and his reputation was that of a drug trafficker. On or about October 19, 2020, the Defendant knew or was advised that Taylor had come to Lexington. A number of attempts to get in telephone contact with Taylor were unsuccessful. Efforts to physically locate Taylor were also unsuccessful. After these attempts to locate failed, Taylor sent the Defendant his location which was on Wheatcroft Drive here in Lexington, Fayette County Kentucky in the Eastern District of Kentucky.

b) On the same day, state and local law enforcement were conducting an investigation at the Wheatcroft Drive address. Law enforcement had received information that a large shipment of controlled substances was to be delivered to that address and unloaded at the same location. Surveillance agents that were located outside of the residence observed a male Hispanic individual driving an SUV pulling a trailer that contained a riding lawn mower arrive at that location. The trailer was pulled into the garage and the garage door was closed. The male Hispanic removed the axles of the trailer which contained multiple bags of controlled substances. While the axles were being unloaded in the garage, surveillance agents observed the Taylor and another individual arrive at that residence.

c) Shortly after the axles were unloaded, Taylor called the Defendant and directed her to come to Wheatcroft. Upon her arrival at Wheatcroft, surveillance agents observed Taylor walk over to the Defendant's vehicle and place an item inside her vehicle. Taylor directed the Defendant to take the item to her residence where he would come over later and pick it up. Surveillance agents conducted continuous surveillance on the Defendant's vehicle. The Defendant drove back towards her residence until stopped by a marked Lexington Police (LPD) vehicle. A subsequent search revealed an item that contained approximately 3 kilograms of suspected cocaine inside the item that Taylor had placed in the Defendant's vehicle.

d) The Defendant was interviewed by law enforcement and provided a statement that was inaccurate about the origin of the item that Taylor had placed in her vehicle.

e) The suspected cocaine seized from the Defendant's vehicle was sent to the KSP lab and tested positive for approximately 2.99 kilograms of a mixture or substance containing cocaine, a Schedule II controlled substance. This amount is consistent with distribution as opposed to mere personal use.

f)  Based on all the circumstances above, the Defendant admits that the United States can prove that she knew, reasonably should have known, or was aware of the high probability that the package contained a controlled substance and deliberately closed her eyes to what was obvious.  The Defendant further admits that she intended to provide the item (which was subsequently found to contain approximately 3 kilograms of cocaine) back to Taylor when he was to come to her residence after she left the Wheatcroft address.

4.  The statutory punishment for Count 7, is imprisonment for not less than 5 years but less than 40 years imprisonment, a fine of not more than $5,000,000, and a term of supervised release of at least 4 years.  A mandatory special assessment of $100 and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5.  Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations.  This recommendation does not bind the Court.

(a)  United States Sentencing Guidelines (U.S.S.G.), November 2021 Manual, will determine the Defendant's guidelines range.

(b)  Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct listed in paragraph 3 above as well as previously provided discovery.  The parties agree that the amount of cocaine foreseeable to the Defendant is at least 2 kilograms but less than 3.5 kilograms. This is a base offense level of 26.

(c)  Pursuant to U.S.S.G. § 5C1.2, the Defendant may qualify for a "safety valve" reduction.

(d)  Pursuant to U.S.S.G. § 3B1.2, the Defendant may qualify for a role reduction and reserves the right to argue for a "minor participant or a "minimal participant" role reduction.  The Defendant further reserves the right to file for an additional departure under U.S.S.G. §5K2.20. Aberrant Behavior.

3

(e) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant=s timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal the final sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate

4

Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

9. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

10. The Defendant understands and agrees that pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit

reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

11.  If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12.  This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13.  This Agreement does not bind the United States Attorney=s Offices in other districts, or any other federal, state, or local prosecuting authorities.

14.  The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant=s entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
U.S. ATTORNEY

Date: 7/19/22                By: _____

Roger W. West
Assistant United States Attorney

6

Date: 7.19.2022

Ouisha Simone Talbert
Defendant

Date: 2/19/22

Hon. Rawl Kazee
Attorney for Defendant

7