UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:21-CR-101-DCR-01

UNITED STATES OF AMERICA                                                                                   PLAINTIFF

V.            **MEMORANDUM OF OBJECTIONS
               TO THE PRESENTENCE REPORT**

MAURICE A. TAYLOR                                                                                            DEFENDANT

\* \* \* \*

Comes the defendant, by counsel, and hereby moves the Court to reject the guideline sentence as calculated in the PSR. It is our formal objection that the narratives set out in ¶¶ 7, 8, 11, 12, 13, 14, 19, 20, 23, 24, 25 and 64 in the PSR are either irrelevant, unnecessary, and/or otherwise impermissible for consideration at Mr. Taylor's sentencing. As set out in the Commentary stated in USSG §6A1.3, "Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy." *United States v. Watts*, 519 U.S. 148, 157; *Nichols v. United States*, 511 U.S. 738, 748; *United States v. Zuleta-Alvarez*, 922 F.2d 33 (1st Cir. 1990), cert. denied, 500 U.S. 927 (1991); *United States v. Beaulieu*, 893 F.2d 1177 (10th Cir.), cert. denied, 497 U.S. 1038 (1990). Mr. Taylor's specific objections to the forgoing paragraphs are as follows, to wit:

a. Except to the extent that ¶ 7 alleges that: "In 2018, law enforcement received information that Marcos Mendoza-Salas was supplying Maurice A. Taylor (Taylor), aka: Wee Wee, with large amounts of fentanyl and cocaine in Lexington, Kentucky, within the Eastern District of Kentucky (EDKY).", the remaining allegations in paragraph 7 outlining investigation and apprehension of Mendoza-Salas are irrelevant, unnecessary, unduly prejudicial and otherwise impermissible to be considered at Mr. Taylor's sentencing because that information is not alleged to concern Mr. Taylor in any way, shape or form, lacks corroborating evidence, and lacks any indicia of reliability.

b. The allegation in ¶ 8 that Taylor delivered cocaine and fentanyl at irregular intervals in 2017 to a residence on Wheatcroft Drive and a residence on Lucille Drive is without a basis in fact; there is no evidence that corroborates that assertion.

c. To the extent ¶ 11 alleges Talbert knew Taylor moved his primary residence to Charlotte, North Carolina, several months before October 2020 and that Taylor was unemployed. Prior to his arrest in August 2021, Taylor had been maintaining his residence in North Carolina since 2011 when he married his wife, Donna Taylor. At best Talbert might say she believed Taylor was unemployed, but that likewise would be objectionable as unreliable, irrelevant, and impermissible. In fact, it is untrue. Mr. Taylor maintained a trucking operation, Taylor Made Trucks.

d. Allegations in ¶ 12 concerning the search of Brown's residence that are unrelated to the offense conduct in this matter must not be included in Taylor's PSR.

e. Similarly, ¶¶ 19 and 20 concerning the search of Shad Wilson's residence at 4512 Graves Drive are irrelevant and must not be included.

f. The overall characterizations of Mr. Taylor laid out in ¶¶ 13 and 14. Trigg and Campbell allege that they were "unaware" of the contents, like Campbell "discovered a large amount of a substance" and Trigg "did not know … the kind of drugs kept." Further, Trigg alleges that he only received items prepackaged, and that he was directed by Mr. Taylor to Campbell when he was to receive these packages. These characterizations and statements of co-defendants are untrue and are without corroborating evidence from individuals who are seeking leniency and downward departures and therefore should not be considered or included in the PSR.

g. To the extent ¶ 23 alleges that Campbell admits that the United States can prove that she knew that Taylor MAINTAINED (emphasis supplied) her residence on Lucille Drive to store controlled substances for distribution by others. This allegation of a co-defendant seeking leniency, downward departures, is without corroborating evidence and this bears no indicia of reliability; nothing in ¶¶ 13-17 discussing the Lucille Drive residence indicates Mr. Taylor maintained the residence. Campbell resided in the residence before she ever met Taylor; there is also no evidence that Taylor paid the mortgage/rent, taxes, insurance, utilities, or upkeep on the premises. Campbell never provided Taylor with a key to her residence. There is no evidence that Campbell received any compensation whatsoever. It is entirely possible that Brown or other co-defendants Campbell, Wilson or Trigg used the Lucille Drive residence for their own illegal purposes, independent of Taylor.

    h. To the extent ¶ 24 alleges that Taylor "maintained" Brown's residence on Wheatcroft Drive, this allegation of a co-defendant seeking leniency, downward departures, is without corroborating evidence and this bears no indicia of reliability; nothing in ¶ 9 discussing the Wheatcroft Drive residence indicates Mr. Taylor maintained the residence. There is also no evidence that Taylor paid the mortgage/rent, taxes, insurance, utilities, or upkeep on the premises. Brown never provided Taylor with a key to his residence. It is entirely possible that Brown or other co-defendants Wilson or Trigg used the Wheatcroft residence for their own illegal purposes, independent of Taylor.

    i. To the extent that ¶ 25 regarding Trigg's admission that the United States can prove that he engaged in an agreement with Taylor and others to distribute over 400 grams of fentanyl, and that he, Taylor, and others did possess with intent to distribute 400 grams of fentanyl. Further, that Trigg admits, as to relevant conduct, the amount of cocaine removed from Taylor from Campbell's residence was approximately one kilogram. This admission of a co-defendant seeking leniency, downward departures, is without corroborating evidence and bears no indicia of reliability.

    j. In regard to ¶ 64, Mr. Taylor has no other pending charges; the traffic case in Shelby County, 12-T-4763, is denoted as paid on the Courtnet system.

These allegations were proffered by co-defendants who were incentivized to embellish and fabricate. The co-defendants have provided no corroborating evidence; no recorded

conversations, no emails, text messages, phone records, etc. The requisite indicia of reliability is lacking as to the co-defendants' proffered information.

While we submit that the court does not have to deem information admissible under the same standard as at trial in order for it to be considered at sentencing, it must still meet the burden of being offered with "sufficient indicia of reliability." With respect to the items we object to, there has been no indicia of reliability offered to support the allegations or the inherent prejudice associated with the offer of leniency and the self-serving motivation.

We formally object to the four sentencing enhancements as stated in ¶¶ 32, 33, 35 and 55 because they omit material facts of the case could unfairly prejudice Mr. Taylor at sentencing without the additional facts being added to the narrative, or, in the alternative, removing the paragraph in its entirety. This motion is made pursuant to ¶5 of the sentencing order entered on July 19, 2022 It is also made under the authority of the Fifth Amendment's guarantee to due process.

In ¶ 32 of the PSR it states: "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by two-levels, pursuant to USSG §2D1.1(b)(12)." Application note 17 in the USSG under §2D1.1 explains that, "Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises. Manufacturing or distributing … must be one of the defendant's primary or principal uses for the premises …. In making this determination, the court should consider how frequently the

5

premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." *United States v. Ortiz*, 807 F. Supp. 2d 746 (N.D. Ill. 2011).

The court in *Ortiz* explained that the 7th Circuit laid out factors for a court to consider in maintaining a "drug house" in *United States v. Acosta*, 534 F.3d 574 (7th Cir. 2008), which the court deemed relevant: "An individual 'maintains' a drug house if he owns or rents the premises, or exercises control over them, and for a sustained period of time, uses those premises to manufacture, store, or sell drugs, or directs others to those premises to obtain drugs." *Ortiz*, 807 F. Supp. 2d at 749. The court explained that a single use of a residence to receive drug shipments does not qualify as maintaining that premises. *Id.*

As mentioned above, in ¶ 14 of the Offense Conduct section it is stated that, at least regarding the Campbell residence on Lucille Drive, the premises was only used "on occasion" with only a specific mention of Trigg going to the residence on 3 or 4 occasions. Taylor denies that Trigg only ever went to Campbell's. Further, Campbell did not provide a key to any defendants and usually stayed at home to let the defendants in. Finally, ¶ 15 only references "one or more occasion" where the Hispanic male would unload drugs at the Campbell residence. Similarly, regarding the Brown residence on Wheatcroft Drive, there is no mention of how many times this residence was "used," there are no mentions of stored drugs, and Brown seems to have been at the premises the only time it is mentioned in ¶ 9. There is no evidence indicating that Mr. Taylor held a possessory interest in the premises or controlled access to or activities at the premises; therefore, this enhancement should not apply.

We also object to the specific offense characteristic found in ¶ 33. In that paragraph, it notes: "If the defendant receives an adjustment under USSG §3B1.1 (Aggravating Role) and the offense involved one or more of the following factors: (A)(i) the defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substance, increase by two-levels, pursuant to §2D1.1(b)(16)(A)(i)." There are 2 other factors within this guideline that are not mentioned in the PSR. They are: (ii) the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances, AND (emphasis supplied) (iii) the individual had minimal knowledge of the scope and structure of the enterprise."

In *United States v. Torres-Magana*, the court explains that a court may enhance a base level by 2 levels if the defendant received a leadership-role enhancement and met all three requirements laid out in USSG §2D1.1(b)(16)(A). 938 F.3d 213, 216-17 (5th Cir. 2019).

Here, there is no proof that Campbell did or did not receive compensation from the offense, whether it be money, gifts, services or other compensation. Further, ¶ 14 in the Offense Conduct explicitly says that "Campbell did know that the stored drugs were not for mere personal use, but were meant for distribution to others." The same analysis can be applied to Talbert, since ¶ 10 states that Talbert was stopped in a vehicle with approximately 3 kilograms of suspected cocaine. Further, Talbert stated in ¶ 11 that she knew Taylor's primary residence was in Charlotte, North Carolina and that Talbert knew Taylor came to visit and had a reputation as a drug trafficker.

Additionally, the enhancement in ¶ 35 should not apply. In this paragraph it states: "The defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; therefore, four levels are added. USSG §3B1.1(a)." Application note #1 under this USSG guideline provides that a "participant" is a person who is criminally responsible for the commission of the offense. Application note #4 says factors that the court should consider include the "exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."

Here, Jesus Valdez Villanueva is never mentioned by name as someone who could be a "criminally responsible" participant. Further, the table in ¶ 18 provides that, of the 6 codefendants, 1 of them (Villanueva) has a "TBD" role. Four of the other 6 have "None" listed as their role in the offense, and the last 1 (Talbert) is listed as having a "Minor Role" in the offense. There is no evidence that Mr. Taylor recruited accomplices in this case. There is also no evidence that Mr. Taylor received a "larger share" of the fruits of a crime.

Finally, the enhancement in ¶ 55 should not apply. In this paragraph, it states that there was a charge on 03/15/2009 of Operating a Motor Vehicle Under the Influence of Alcohol/Drugs-1st Offense in Fayette County District Court, Docket No. 09-T-9938. The date the sentence was imposed was 04/22/2009 of 4 days jail; $200 fine; $518 court costs. This charge adds one level pursuant to §4A1.1(c), which provides: "Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection." Further, USSG

8

§4A1.2(e)(2)&(3) states, "Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted. Any prior sentence not within the time period specified above is not counted."

Here, commencement of the current offense was after 04/22/2019. Almost all of the dates mentioned in the Offense Conduct section occur in 2020 or later, including, but not limited to, the investigation at the Wheatcroft Drive residence, Talbert being found with suspected cocaine in her possession, the search warrant being executed at the Brown residence, Campbell allowing Mr. Taylor to store items at her residence, the search of the Lucille Drive residence, and the surveillance beginning on Mr. Taylor.

As eight-points worth of enhancements do not apply in this case, Mr. Taylor's total offense level should be Level 31. Further, as the criminal history category calculation is partially incorrect, Mr. Taylor's criminal history computation should leave him with a score of three. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of three establishes a criminal history category of II. Therefore, Mr. Taylor's guidelines should be calculated as 121-151 months.

WHEREFORE, the defendant requests an order calculating Mr. Taylor's total offense level at 31, with an advisory guideline sentence of 121-151 months.

Respectfully submitted,

/s/ Matthew W. Boyd
Matthew W. Boyd
Boyd Law Office, PSC
155 East Main Street, Suite 220
Lexington, Kentucky 40507
859-252-0222

<u>/s/ Gayle E. Slaughter</u>
Gayle E. Slaughter
149 N. Limestone Street
Lexington, KY 40508
859-233-0132
